ESTELLA M. (Mrs. J. C.) BLUNK, appellant, v. L. A. KUYPER, appellee.

No. 47741.

(Reported in 44 N.W.2d 651)

NOVEMBER 14, 1950.

Charles H. Scholz, of Oskaloosa, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellee.

MANTZ, J.—Plaintiff, Estella M. Blunk, brought suit against defendant, L. A. Kuyper, to recover on a promissory note given her husband on February 3, 1934. The defense was (1) Statute of Limitations and (2) Compromise and Settlement. Plaintiff relied upon alleged admissions in writing made by defendant to Stella May Kuyper, wife of defendant, and daughter of plaintiff. The case was submitted to the jury and a verdict was returned for defendant. The plaintiff appealed.

I. The questions presented on this appeal involve the overruling of the plaintiff's motion to strike portions of defendant's answer, rulings on admission of evidence, plaintiff's exceptions to instructions, and the denial of plaintiff's motion for a new trial.

We will briefly summarize the pleadings and some of the proceedings relating thereto: On December 16, 1948, plaintiff filed her petition at law against the defendant, L. A. Kuyper, bringing suit on a $2900 note of defendant to J. C. Blunk of February 3, 1934, and due in one year. Plaintiff alleged ownership of the note and stated that in March 1946 and also in March 1947 defendant admitted said note in writing; that same had not been paid; and she demanded judgment for the sum of $7342.13, attorney fees and costs.

Defendant admitted the giving of the note to J. C. Blunk; that a true copy was attached to the petition and that J. C. Blunk died July 29, 1935; that in March 1946 he signed a written stipulation which was filed with the clerk of the district court in the case of Stella May Kuyper v. L. A. Kuyper, but denied that it removed the bar of the statute and further claimed that later he made a compromise and settlement with plaintiff. He alleged that the stipulation was prepared by Ned P. Gilbert, attorney for Stella May Kuyper, daughter of plaintiff, and further specifically pleaded that when said stipulation was prepared

and presented to him on March 27, 1947, the $2900 indebtedness was mentioned therein, and that defendant objected to such being included therein and stated that he was not indebted to Mrs. Blunk on any $2900 promissory note; that he had at one time executed a note to said J. C. Blunk in said amount; that said note was outlawed; that defendant was not liable therefor; that the debt for which the said note was given to the said J. C. Blunk was released by him in his lifetime and that to sign the same would revive said note and make the defendant liable therefor; that thereupon said Gilbert stated to the defendant that the language contained in paragraph 9 of said stipulation could not and would not be construed as an admission by the defendant that the indebtedness represented by the $2900 note was unpaid, or as a promise to pay said indebtedness, or as a revival of the outlawed cause of action on said note, and that it was for the sole purpose of protecting Stella May Kuyper against any claim of ademption that might thereafter arise in the estate of her mother, plaintiff herein; that thereafter, and in reliance upon said representations by said Gilbert, defendant signed said stipulation; that the signing of the same under those conditions did not amount to an admission that the note sued upon was unpaid, or a new promise to pay the same, or a revival of a cause of action sued upon.

In another division of his answer, defendant realleged the matters above set forth with regard to his objections to the signing of the stipulation and the assurances given him by Gilbert, and further stated that on December 20, 1947, he and plaintiff had a full compromise settlement with regard to all claimed indebtedness by defendant to the plaintiff, and that by reason thereof he is not liable to plaintiff in her action.

Plaintiff moved the court to strike from defendant's answer the above allegations as to the circumstances existing at the time the stipulation was prepared and the objections which he, defendant, made to signing the same and the representations made to him by Gilbert and defendant's reliance thereon and his signing the same. This motion was overruled and such ruling is urged as error in this appeal. Thereafter, plaintiff filed reply to defendant's answer and specifically denied each of the affirmative allegations thereof.

1142

We will briefly summarize from the record some matters which have a direct bearing on the issues:

Defendant and Stella May Kuyper were married for twenty-three years prior to March 1947, when they were divorced.

.It is undisputed that on February 3, 1934, J. C. Blunk, husband of plaintiff and father of Stella, loaned defendant $2900 for which he gave his promissory note due in one year. Upon the death of J. C. Blunk, July 29, 1935, the note became the property of plaintiff herein and was in her possession at all times thereafter. Plaintiff, as executrix of her husband's estate, did not inventory the note. At various times after the death of J. C. Blunk the defendant became indebted to plaintiff. The record shows that nothing by way of principal or interest had been paid on the $2900 note.

In the fall of 1946, defendant and his wife, Stella, became involved in marital difficulties. On October 21, 1946, Mr. Gaass, attorney for defendant, and Ned P. Gilbert, attorney for Stella, met in Gilbert's office in Oskaloosa, Iowa, and there discussed questions pertaining to certain matters including a property settlement between defendant and his then wife in case a divorce was granted. A stipulation was prepared and signed by defendant but Stella refused to sign it and it was not used. One of its clauses was Exhibit 5 and in it reference was made to certain debts purported to be owing by defendant to plaintiff. When defendant signed, blank spaces were left for filling in the amount of such debts. The record indicates that these blanks were later filled in by attorneys for Stella May Kuyper. On October 26, 1946, defendant and Mr. Gaass went to Gilbert's office to confer with Gilbert concerning the settlement between defendant and Stella in the divorce proceedings. There a stipulation of settlement was prepared and it was signed by defendant and Stella. At that time Stella was present with her attorneys, Gilbert, Jones & Fleck.

II. Plaintiff rests her case upon the claim that the two writings referred to above revive the cause of action (section 614.11) and that they amount to an admission of the $2900 indebtedness and a promise to pay the same.

Defendant's contention, in essence, is that the signed stipulation was not a legal revivor of the note sued upon, and that

before suit he and plaintiff compromised and settled all claims between them, including the note sued upon.

We will set out the pertinent parts of said writings, being shown in Exhibits 5 and 6:

"Exhibit 5: * * * Par. 10. It is agreed by the parties that the defendant is indebted to Mrs. J. C. Blunk for money advanced to the defendant for business purposes in the amount of 4487 dollars, and, coincident with the granting of the decree of divorce in this case, if a divorce is granted by the court, the defendant will execute a note to Mrs. J. C. Blunk in the amount of 4487 dollars, with interest at five (5%) per cent, payable semi-annually; said note to become due in five (5) years from the date of the execution thereof.

"Exhibit 6: * * * Par. 9. Defendant hereby acknowledges that he has in the past borrowed certain sums from Mrs. J. C. Blunk, mother of the plaintiff, one of such sums being represented by a note in the amount of twenty-nine hundred ($2900) dollars and another being a note in the amount of fifteen hundred ($1500) dollars and certain other evidences of indebtedness, and in this connection defendant agrees that he will forthwith negotiate with Mrs. J. C. Blunk in order to determine the amount of his indebtedness to her and that he shall make such arrangements with the said Mrs. J. C. Blunk to satisfactorily compromise or settle said indebtedness so that no claim of ademption shall be made against any expectancy of Stella May Kuyper."

III. The first three errors urged by plaintiff are presented together in one division of her brief. As all of them essentially relate to the same matter we will consider them together.

The first relates to the refusal of the court to strike from defendant's answer his allegations as to his purpose and interest in executing the stipulation, and his conversation with plaintiff's attorney at the time Exhibit 6 was executed.

The second error was the overruling by the court of objections to said defendant's testimony relating to the same subject.

The third related to the action of the court in refusing to strike said testimony.

In consideration of the legal effect of the two exhibits hereinbefore set forth we are to keep in mind that plaintiff was not

a party thereto. The inclusion of the indebtedness existing between plaintiff and defendant was doubtless placed there for a definite purpose. Some reference is made in Exhibit 6 so that no claim of ademption could be made against any expectancy of Stella May Kuyper.

Admittedly, on its face the note sued upon was barred by the statute (614.11, Code of 1946) when the suit was brought.

Section 614.11, Code of 1950, reads: "Causes of action founded on contract are revived by an admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same."

This statute has been in our Codes for over a century, with little change. It has been construed many times and it would serve no useful purpose to attempt to analyze and discuss our many decisions pertaining thereto.

The recent case of Horn v. Anderson, 234 Iowa 1068, 1074, 13 N.W.2d 693, 696, deals with the matter of an admission sufficient to revive a barred debt. Therein we said: "An admission, which the writer qualifies in the next breath by the assertion of the defense of the statute, is not the kind of an 'admission' contemplated by the legislature in section 11018 [614.11, Code of 1950].

That opinion discusses when and under what circumstances there is a revivor of a barred debt. We made further reference to the Horn holding in the case of Buttolph v. Geeseka, 241 Iowa, 1013, 44 N.W.2d 434.

A writing, under the statute, claimed to revive an outlawed debt is not a contract. Mahon v. Cooley, 36 Iowa 479.

We can start out with the proposition that if defendant's testimony was proper and competent as to his purpose in signing Exhibit 6, and his objection to the same with the inclusion therein of the reference to the $2900 outlawed note, and the assurances of Attorney Gilbert for Stella May Kuyper that its sole purpose was to compromise or settle the indebtedness existing between plaintiff and defendant, then, and to create an ademption, the defendant would have a right to plead such claim, to offer evidence in support thereof and to have the same considered by the jury.

The trial court in overruling plaintiff's motion to strike parts of defendant's answer and in permitting defendant to testify pursuant to the allegations of said answer and in refusing to strike the same treated the claimed revivor as a fact question. In so ruling we hold that the court did not err and that the parts of the answer attacked were proper and that this was true of the evidence which defendant offered to sustain such plea. This being true, the court properly refused to strike it. We think the rules and principles as laid down in the cases fully sustain the trial court in such rulings.

We will call attention to some of our decisions dealing with such matters.

In 32 C. J. S., Evidence, section 1000, page 979, it is said that "generally speaking, a collateral agreement which constituted part of the consideration for a written agreement, or operated as an inducement for entering into it, may be shown by parol evidence * * *." (Citing Mason v. Cater, 192 Iowa 143, 182 N.W. 179.) In Banwart v. Shullenburg, 190 Iowa 418, 180 N.W. 190, we held that in the case of contracts matters serving as an inducement may be shown. In Sutton v. Griebel, 118 Iowa 78, 91 N.W. 825, we held that an oral agreement collateral to the writing and serving as an inducement for the signing may be shown. Therein this court stated that the rule that the terms of a written instrument cannot be contradicted by parol evidence of a contemporaneous agreement was subject to well-recognized exceptions. See also Herron v. Brinton, 188 Iowa 60, 175 N.W. 831; 32 C. J. S., Evidence, section 997, page 970. Miller Hotel Co. v. Gorman, 194 Iowa 751, 190 N.W. 524; In re Estate of Simplot, 215 Iowa 578, 246 N.W. 396. In the case of Hartley State Bank v. McCorkell, 91 Iowa 660, 60 N.W. 197, this court held that one being sued had a right to prove the reasons for and circumstances under which an admission was made. In the case of State ex rel. Carroll v. Corning State Sav. Bk., 136 Iowa 79, 113 N.W. 500, there was a question of whether the receiver of a closed bank could show that a certificate of deposit was in fact a loan. It was claimed that to so permit would violate the parol-evidence rule; this court held that, under the circumstances, parol evidence was admissible to show the true nature of the transaction. See Zalesky v. Fidelity & Cas.

Co., 176 Iowa 267, 157 N.W. 858. In the case of Popofsky Co. v. Wearmouth, 216 Iowa 114, 119, 248 N.W. 358, there was a question of the admissibility of parol evidence in relation to a certificate of deposit, a claim being made that the certificate did not express the true agreement of the parties. This court held this proper to show by such parol evidence the true agreement. The court, in support, cited from 22 C.J., Evidence, section 1715, page 1283, wherein it is stated that where a written instrument executed pursuant to a verbal agreement does not express the entire transaction of the parties the parol-evidence rule does not apply to prevent the introduction of extrinsic oral evidence of the matter not provided for in the writing, citing State ex rel. Carroll v. Corning State Sav. Bk., supra.

■ In 20 Am. Jur., Evidence, section 1107, under the head of "writings introduced as admissions" we find: "If a writing is introduced in evidence as an admission, and not as a part of the contract between the parties, it is always admissible for the person who wrote it, and against whom it is introduced, to explain the meaning he intended to convey." Therein is cited the case of Phelps v. James, 86 Iowa 398, 53 N.W. 274, 41 Am. St. Rep. 497. In that case this court held that one writing a letter had a right to show the circumstances under which the statement was made and what the writer meant by it. The court cited a statement from the case of Mickey v. Burlington Ins. Co., 35 Iowa 174, 181, as follows: "If the language of a witness, either written or oral, is introduced to establish an admission, he has the privilege of giving his understanding of its import, of stating its true meaning in the connection as used by him", citing 1 Greenleaf on Evidence, section 462, note 1. See also Robinson v. Campbell, 47 Iowa 625.

■ In 22 C.J., Evidence, section 1529 (32 C. J. S., Evidence, section 928), it is stated that "a writing which does not vest, pass, nor extinguish any right either by contract, operation of law, or otherwise, but is used as evidence of a fact, and not as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts."

In considering the evidence as to the admission of the stipulation being a revivor of the barred $2900 note the jury could properly consider various matters shown in the record—

when the note was made; the period of time before suit was brought; the fact that nothing had been paid thereon; the other loans and indebtedness existing between plaintiff and defendant, and the conversations between them as to such matters; the marital difficulties which arose between defendant and his wife; their negotiations as to a settlement of the property rights between them, in case a divorce was granted, the stipulation and who prepared the same; the provision therein that defendant agreed to negotiate with Mrs. J. C. Blunk in order to determine the amount of his indebtedness and to make arrangements with her to satisfactorily compromise and settle said indebtedness; the presentation of the same to the defendant and his express objections to signing the same with the inclusion therein of reference to the $2900 note to J. C. Blunk and the representations of Attorney Gilbert as to the purpose and legal effect thereof; the subsequent dealings between plaintiff and defendant wherein defendant executed and delivered to plaintiff certain notes and checks which the defendant claimed was a settlement and compromise of all indebtedness between them. We call particular attention to the record wherein plaintiff testified that after the stipulation she went to Pella to see the defendant and to settle her claims against him; that she talked to him in his office and that during the discussion and settlement of her claims against him she stated: "Then I said, 'Lew, here is the $2900 note. What are you going to do about it?' He said, 'Mother, in the first place the interest is too high and it is running into too much money, and I am so obligated that I couldn't pay it, and I'm not going to sign anything I can't pay.' He said, 'Besides it is outlawed.' "

A witness corroborates defendant in regard to such conversation and we do not find in the record any denial thereof by plaintiff.

We hold that the trial court did not err in the three particulars set forth by plaintiff.

IV. The defendant claimed in pleading and argument that in his dealings with plaintiff following the stipulation there was a settlement and compromise of the indebtedness between them.

Plaintiff claimed error in failure of the court to instruct the jury that defendant's claim, as above set forth, was without any consideration, void and not binding on her.

The court set out correctly, in the issues, defendant's claim, and in an instruction advised the jury that the burden was upon the defendant to establish the matter necessary to show settlement and compromise. Briefly, such matters were claims of plaintiff against defendant, being asserted by plaintiff; the disputes between them as to some or all of said matters; that the plaintiff and defendant agreed to settle such claims; and that the terms of such agreement were carried out.

The instruction called for a finding on a fact question. There was evidence in the record sufficient to permit the jury to find that at that time there were various claims which plaintiff held against the defendant; that some of the items were in dispute; that they met at plaintiff's home in Fremont, Iowa, and later at the place of business of defendant at Pella; they discussed items including the $2900 note, and a claim of plaintiff for $385 (money she claimed she had given the former wife of defendant). Defendant disputed both claims, the first that it had been given to him, and besides it was outlawed and that he was not liable for the $385 item. Defendant testified that at that time there was a compromise settlement and that in addition to paying plaintiff certain items he included therein the disputed $385 item and gave plaintiff notes and a check in full settlement.

The record shows that plaintiff accepted the new notes and cashed his check for $266.90, but did not give defendant the old note. She testified that at the time they were discussing defendant's indebtedness, he refused to pay because the $2900 note was outlawed. She said, "I knew the note was outlawed according to law, yes; according to honor, no." As this was a dispute between plaintiff and defendant on defendant's claim of settlement and compromise, it was the province of the jury to pass upon the merits of the dispute.

Plaintiff's specific claim is that the court erred in not telling the jury that the compromise settlement was without consideration and was void against her. Under the record an instruction, such as plaintiff claimed should have been given, would not have been proper. To have given it we think would have been error.

We have held that in such a situation where there are disputes and controversies between parties a settlement-contract is sufficient consideration. Also, that the law favors settlements fairly entered into. The matter was discussed at considerable length in the case of Messer v. Washington Nat. Ins. Co., 233 Iowa 1372, 11 N.W.2d 727, and many of our holdings were set forth and some quoted from. Therein we cited and quoted from Urdangen v. Fryer (Ladd, J.), 183 Iowa 39, 166 N.W. 693; Greenlee v. Mosnat, 116 Iowa 535, 90 N.W. 338; First National Bank v. Browne, 199 Iowa 981, 203 N.W. 277; In re Estate of Beck, 239 Iowa 655, 32 N.W.2d 217. See also Marron v. Lynch, 215 Iowa 341, 245 N.W. 346; 15 C. J. S., Compromise and Settlement, section 51b(2).

We are of the opinion that the instructions of the trial court fully and correctly informed the jury as to the rules to be applied to compromise and settlement.

V. It is next urged by plaintiff that the court erred in giving to the jury instruction No. 9 and overruling plaintiff's exception thereto. Said instruction dealt with the identity of the $2900 note and the burden resting on plaintiff to establish such fact. Defendant denied that he had ever given such note to plaintiff but admitted that he had given such a note to J. C. Blunk. Plaintiff's exception dealt with paragraph 2 of said instruction which is as follows: "2. That said stipulation of settlement, known as Exhibit 6, refers to the debt in question, or, in other words, refers to the promissory note sued upon by the plaintiff in this cause of action." This was in connection with the instruction concerning the stipulation (Exhibit 6) which stated that defendant had during the past borrowed a sum from her represented by the $2900 note; also, referring to other notes. The instruction told the jury, in substance, that plaintiff must establish the identity of such disputed note.

We are unable to see wherein the instruction excepted to was prejudicial to plaintiff. As a matter of fact it seems to be, if anything, more favorable to plaintiff, in that it ignored the claim of defendant that the written stipulation as a whole did not amount to a revivor of the debt. In this case defendant pleaded an affirmative defense to plaintiff's claim of a revivor and we have held that the evidence on that point made an issue

1150

for the jury and that such verdict determined such question. We see no error here as claimed by plaintiff.

■■ VI. Plaintiff's next claim of error is as to her requested instruction No. 2. This requested instruction was to the effect that plaintiff's possession of an uncanceled note was prima facie evidence that such note was unpaid and that the burden was upon the defendant to show that there was a compromise settlement thereof. We do not think the claimed error was good. The court refused said requested instruction. The only exception we find plaintiff making to such refusal was a blanket one and is summed up as follows: "Plaintiff further excepts to the instructions and all of the instructions for the failure of the court to give plaintiff's requested instructions Nos. 1, 2, 3, 4, 5, 6, and 7." Such an exception does not comply with rule 196, Rules of Civil Procedure. In addition, we do not think it applicable to the evidence as shown by the record. The record shows without dispute that at all times the defendant claimed the $2900 note was outlawed; he told Gilbert so; also, on two occasions he told plaintiff that it was outlawed; she admits that he made such a claim to her. The note on its face showed that it was barred. The court instructed that plaintiff would have to show a revivor. There was no error as claimed by plaintiff.

VII. There was some claim in evidence that in Exhibit 5 there had been some alteration in the pages thereof. The court dealt with such matter in instructions 7 and 8.

■ We do not find that the plaintiff interposed any exceptions to such instructions. The record shows that there was an opportunity for counsel to make objection or take exception to these instructions but had not done so. Rule 196, R.C.P. No exception having been taken, we will not consider the claimed error.

While the parties have argued the above claimed error at some length we are content to hold as above indicated—that there was no proper exception taken by the plaintiff.

VIII. The next error urged is the court's refusal to give plaintiff's requested instruction No. 1. The requested instruction dealt with defendant's claim of compromise and settlement and what must be shown in order to establish such claim. We find no proper exception taken to the court's refusal. We might add

that the court in its instructions 10 and 11 fully and correctly instructed the jury under what circumstances a compromise and settlement could be shown, telling the jury that the burden was upon the defendant to so show. These two instructions, in substance, covered the matters set forth in the requested instruction. We find no error here.

IX. The two final errors claimed by plaintiff are set forth in one division. The first relates to the action of the trial court in striking objections and exceptions filed by plaintiff after the verdict and the second in the refusal of the court to set aside the verdict and grant a new trial. Plaintiff makes slight argument as to such claimed errors.

As regards the first set forth, the complaint is largely to the effect that the trial court did not give plaintiff ample time before the instructions were read to the jury to prepare objections and exceptions thereto.

We have examined the record and are of the opinion that the court afforded plaintiff opportunity to make additional objections and exceptions to the instructions before they were given to the jury. The record shows that before the instructions were read there was a colloquy in the courtroom between counsel for the respective parties and the court as to additional objections, and at that time counsel for plaintiff remarked, "Oh, well, let it go at that, I guess everything is covered." The record shows that respective counsel on the night before, after having inspected the court's preliminary draft of the instructions, had dictated into the record objections and exceptions to such proposed instructions. The jury was instructed on October 21, 1949, and returned a verdict on the same date. On November 28, 1949, plaintiff filed exceptions and objections to the instructions given and on the same date made application for a bill of exceptions, the last being to show that plaintiff had not had adequate time and opportunity to object and file exceptions to the instructions given. After a hearing, wherein testimony was taken, the court sustained a motion to strike and denied the application for a bill of exceptions. Under the record made, we hold that there was no error.

The final error claimed is the failure of the trial court to set aside the verdict and grant a new trial. We have gone over

the record and are of the opinion that the plaintiff had a fair trial; that the issues were clearly and properly set forth to the jury and that the verdict is supported by the evidence.

We have not attempted to set out herein an analysis of the many authorities cited by the parties in argument. There were two principal issues in the case: (1) Was the signing by the defendant of the stipulation in another case a revivor of a debt admittedly barred under the provisions of chapter 614, Code of 1946? (2) Did plaintiff and defendant, following said stipulation, enter into a valid compromise settlement of claims which plaintiff was urging against defendant?

 Both were fact questions and the jury found adversely to plaintiff. Such verdict has substantial evidence to support it and it is binding upon this court. The case is affirmed.— Affirmed.

GARFIELD, C.J., and BLISS, HAYS, MULRONEY, and WENNERSTRUM, JJ., concur.

SMITH and OLIVER, JJ., take no part.

HALE, J., not sitting.